UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAVID E. BARNES, JR., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )    Case No. 4:20-CV-0086 NAB |
| | ) |
| KILOLO KIJAKAZI[1], | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff David E. Barnes, Jr.'s appeal regarding the denial of disability insurance benefits under the Social Security Act. The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 9.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will reverse the Commissioner's decision.

**I.   Issues for Review**

Barnes presents two issues for review. He asserts that the administrative law judge ("ALJ") erred by (1) failing to properly evaluate residual functional capacity; and (2) considering evidence outside the record. The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record as a whole and any error in consideration of outside evidence is harmless.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**II.     Standard of Review**

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported

by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

**III.     Discussion**

    **A.     ALJ's Decision**

The ALJ found that Barnes met the insured status requirements of the Social Security Act through March 31, 2017, and that he had not engaged in substantial gainful activity since June 7, 2012, the alleged onset date. (Tr. 57-58.) Next, the ALJ found that Barnes had the severe impairment of plumbism (neurodevelopmental disorder). (Tr. 58.)

The ALJ determined that Barnes did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. The ALJ also determined that Barnes had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional

limitations: "that he is limited to simple and/or repetitive work with no close interaction with public or coworkers (i.e., no teamwork and solitary type work)." (Tr. 59-60.)

The ALJ found that Barnes has no past relevant work. Barnes was 19 years old, which is defined as a younger individual (age 18-49), on the alleged disability onset date. (Tr. 63.) Barnes has at least a high school education and is able to communicate in English. (Tr. 64.) Based on the foregoing, the ALJ found there are jobs that exist in significant numbers in the national economy that Barnes can perform, such as a hand packer, laundry worker, or janitor. (Tr. 64.) Therefore, the ALJ ultimately concluded that Barnes was not under a disability, as defined by the Social Security Act, from June 7, 2012 through January 29, 2019.

### B. Consideration of Materials Not in Evidence

Barnes contends that the ALJ committed reversible evidence by referencing "prior file evidence." In the ALJ's decision in this case, the ALJ wrote a paragraph without specific citations, and then at the end cited to "1E and prior file evidence." (Tr. 62.) Exhibit 1E is Barnes' Individualized Education Plan. (Tr. 68.) The ALJ did not elaborate on what the "prior file evidence" was and did not include it in the List of Exhibits attached to his decision. (Tr. 66-69.) The record does reference a prior claim filed in 2011 and decided in 2012, but that file was not made a part of the record in the present case. (Tr. 444- 445.)

Barnes argues that the paragraph citing the "prior file evidence" was included within the section of the decision that purported to support the RFC finding, which determined the outcome of Barnes' claim. He contends the ALJ considered and relied on this evidence that was not made available to Barnes' counsel, and that the prior file evidence may provide additional support for Barnes' argument that he lacks the capacity to maintain focus on simple tasks in a full-time competitive workplace.

4

"It is erroneous for the ALJ to rely on items outside the record." *Pinegar v. Astrue*, No. 4:10-CV-643 CEJ, 2011 WL 2621670, at *10 (E.D. Mo. July 5, 2011) (citing *Albalos v. Sullivan*, 907 F.2d 871, 874 (9th Cir. 1990). Defendant does not dispute that reliance on evidence outside the record is error. (Doc. 16 at 8.) However, Defendant argues that in this case, any error was harmless because most of the evidence the ALJ mentioned is found in the record as it currently stands, and because the ALJ's decision would have remained the same without reference to the outside evidence.

The ALJ's citation to "prior file evidence" was in support of a section of the decision that seemed to summarize Barnes' IEP:

> The record contains Individualized Education Program (IEP) records from the Special School District of St. Louis. The claimant had an educational diagnosis of language and speech impaired and learning disabled. He had significant medical concerns that included a history of lead poisoning and ear infections. He was frequently observed to engage in sensory seeking behaviors, he rocked back and forth and clapped his hands and chewed on things. The claimant was in a self-contained language classroom in general education for 1,520 minutes a week. He also received 60 minutes in a learning disability academic instruction room, 60 minutes in speech therapy, and 30 minutes in occupational therapy. It was noted he could not participate in regular education because he required a small group therapeutic environment to address his language needs and learning disability needs. As a senior student, it was noted he continued to require assistance in the area of language impairment and he worked best with material that was broken down in smaller pieces and extra time to complete assignments. He engaged in self-stimulating behaviors ( e.g., clapping hands, talking to self, flapping his hands, and rocking), when he was excited, stressed or concentrating on things. It was noted that his disability could have a negative impact on his ability to find a job in the future. IQ testing revealed scores within the low average range of intellectual functioning (full scale IQ score of 90).
> However, it was also noted that he worked with the summer job skills program and he was working on becoming more able to get from place to place via public transportation. With redirection and reminders, he was very good about getting back to work. It was noted he had a computed tomography (CT) scan on February 6, 2000 that showed normal appearance of the brain, parenchyma and ventricular system. It was noted he was fun, likeable and a 'treasure' to have in any class. He was willing to work hard and complete all work. He dealt well with a family tragedy at the beginning of the year. He was doing well academically and he graduated high school. He showed that he was capable of keeping up in more

5

> general education classes. It was noted that he was gaining a good work experience, which had a positive effect on his outlook and chances for future jobs (lE and prior file evidence).

(Tr. 61-62.)

The ALJ's single citation to Exhibit 1E (a 191-page Individualized Education Plan) and "prior file evidence" does not make clear what information the ALJ considered and relied upon in his findings. Upon review of the record, the undersigned agrees with Defendant that many of the ALJ's references can be connected to the record, regardless of whether the ALJ derived the information from the IEP or the prior file. (*See* Tr. 239, 247, 360, 361.) The IEP does reference a family tragedy, a successful summer working with the sweep program, and that Barnes is a hard worker who contributes positively during class. (Tr. 239, 361.) However, the IEP does not include information regarding his experience with public transportation, and it does not specifically state Barnes is a "treasure" to have in any class, which leads to the assumption that this quote is from the prior file evidence. Also notably absent from the record is the February 6, 2000 CT scan of Barnes' brain.[2] Defendant argues that citation to a normal CT scan of Barnes' brain is harmless error, because the ALJ conceded that Barnes suffered from plumbism and as a result had serious functional limitations. (Doc. 16 at 9.) The undersigned disagrees. Although it is clear that Barnes suffered from plumbism, the ALJ was required to make findings regarding the extent of Barnes' functional limitations resulting from his impairment. The ALJ's discussion of medical records not in the record and outside of the time period at issue is problematic, because it is unclear what evidence influenced the ALJ's decision making. The ALJ does not explain why the CT scan is

---

[2] The ALJ could have, but was not required to, make the CT scan a part of the record, as it was done years before Barnes filed his application for benefits. Social Security regulations require the ALJ to develop the claimant's complete medical history for at least the 12 months preceding the month in which the claimant's application was filed. 20 C.F.R. § 404.1512. The ALJ may consider evidence outside the alleged period of disability. "Evidence from outside the insured period can be used in helping to elucidate a medical condition during the time for which benefits may be rewarded." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

6

referenced. The ALJ seems to weigh some of the limitations reflected in the IEP with Barnes' successes and normal CT scan, which partially appear in the IEP. Barnes argues that the prior file evidence may contain additional support for Barnes' argument that he lacks the capacity to maintain focus on simple tasks in a full-time competitive workplace. His argument is well taken. Because the prior file evidence is not in the record, it is unclear what evidence was reviewed by the ALJ, relied upon, disregarded, or discredited. Barnes was not aware that prior file evidence was being considered, and he did not have the opportunity to review it and defend himself with respect to said evidence at the hearing.

The undersigned cannot determine whether the ALJ's decision was substantially supported by the evidence when the record does not contain all of the evidence the ALJ considered in rendering a decision. Under these circumstances, the ALJ erred in omitting the prior file evidence from the record, and it cannot be said that the error was harmless. For these reasons, remand is appropriate.

      **C.**      **RFC Evaluation & Limitations in Maintaining Pace While Performing Simple Tasks**

Barnes also argues that substantial evidence does not support the ALJ's assessment of the RFC because did not include a description of Barnes' difficulty maintaining focus and pace when performing simple tasks without special help. Defendant responds that, despite Barnes' emphasis of contrary evidence, substantial evidence supports the ALJ's decision. Because reversal is required on Barnes' other point of error, the Court need not address this allegation. Nevertheless, without making a finding as to whether this is a basis for remand, the Court will briefly address Barnes' argument.

The ALJ considered listings for neurodevelopmental disorder (12.11) and determined that Barnes did not satisfy the paragraph B criteria.[3] (Tr. 59.) In understanding, remembering, or applying information, the claimant has a moderate limitation. In interacting with others, the claimant has a moderate limitation. With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. As for adapting or managing oneself, the claimant has experienced a mild limitation. (Tr. 59.)

> In finding moderate or mild limitations in each area at Step Three, the ALJ stated: The claimant alleges disability due to brain damage from plumbism (lead poisoning), abuse, concentration problems, and abnormal motor movements. He is diagnosed with borderline intellectual functioning. He received special education services for learning disability. The records indicate he lives with his aunt and she provides assistance with taking him places and handling his finances. The claimant does not have a drivers' license and he does not drive. IQ testing resulted in scores consistent with low average range intellectual functioning. He had help from his aunt to complete the forms when applying for benefits. He stated he could not work because he could not concentrate and he had a hard time remembering. However, the records indicate the claimant is working part-time at a bakery and he is able to follow a "to-do" list of items needed for that day. He stated he uses Call-A-Ride to get to work and he arranges this himself. When he is not working he plays video games, watches television, uses social media, visits his grandparents, and hangs out with friends. He was able to do simple calculations and he reported he can count change. He demonstrated decent working knowledge of social norms and he had no problems interacting with others. He stated he had friends from work. Such findings and facts do not support findings of marked or extreme limitations in functioning.

(Tr. 59.) The ALJ does not include citations to the record or specify which findings he relies on for each specific area of function. The Court observes that much of the information contained herein is reported by Barnes, despite the ALJ's finding that Barnes' statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely consistent with the

---

[3] To determine whether a claimant satisfies Listing 12.11 (neurodevelopment disorders), the Commissioner uses a five-point scale (none, mild, moderate, marked, and extreme) to rate the claimant's degree of limitation in four broad functional areas: the ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a. To demonstrate the Paragraph B criteria, a claimant's mental disorder must result in either an extreme limitation in one or marked limitation in two of the four broad functional areas. 20 C.F.R. § 404, subpart P, appendix 1. The Commissioner uses all relevant medical and nonmedical evidence in the record to evaluate a claimant's mental functioning limitations. *Id.*

8

medical evidence and other evidence in the record. (Tr. 63.) For example, the ALJ relies on Barnes' report that he uses Call-A-Ride to get to work and he arranges it himself. (Tr. 59.) However, third party reports[4] from Barnes' aunt who assists him with day to day care state that "[h]e cannot use the bus, but does take Call-A-Ride with some assistance (having correct change given to him, and the phone number for Call-A-Ride provided.) He would get very confused if he tried to take the bus or metro link alone." (Tr. 484, 488.)

In finding moderate limitations, the ALJ also reports that "the records indicate" Barnes works part-time at a bakery and can follow a "to-do" list of items needed for that day. (Tr. 59.) The ALJ does not mention until later that Barnes testified he has a job coach who helps him stay on track at his part-time job he obtained through the Center for Head Injury. (Tr. 61.) Barnes testified that his job coach helps make sure he does not forget an ingredient or miss a step in his list. (Tr. 81.) Barnes' aunt reported that he cannot follow written instructions such as a recipe. (Tr. 486.) Barnes' employer at the bakery submitted correspondence stating that Barnes "cannot stay on task unless he has one on one support and then understand the task is still challenging for him. [Barnes] is very pleasant and liked by his Teammates but I could not recommend him for any other employment knowing his barriers [sic] and complications." (Tr. 546.)

In contrast with Barnes' testimony and third party statements of his aunt and employer, during his consultative exam conducted by psychologist Thomas J. Spencer, Psy.D., Barnes minimizes the role of his job coach. Barnes reported to Dr. Spencer that he works part-time at a bakery and has a "to-do list" which instructs him on which specific items to make. Based on his discussion with Barnes, Dr. Spencer stated "[h]e works with two others along with a couple

---

[4] As the ALJ notes, the second third party report is unsigned. However, based on the content therein and the content of the Third Party Function Report signed by Barnes' aunt, this unsigned report appears to be a supplement to his aunt's initial report. (Tr. 488.)

9

supervisors. He said he knows his job and does not require intensive supervision." (Tr. 566.) A few days after Dr. Spencer's evaluation, Barbara Markway, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique Form and a Mental Functional Capacity Assessment. After reviewing the information available, which included Dr. Spencer's exam, Dr. Markway also found a moderate limitations in the ability to concentrate, persist, or maintain pace. (Tr. 96.) In reaching her conclusion, Dr. Markway specifically documented Dr. Spencer's report that "he knows his job and does not require intensive supervision." (Tr. 97.)

When asked about his job during the hearing before the ALJ, Barnes reported that he helps people bake cookies and other desserts by gathering and/or mixing ingredients and putting things in the oven. (Tr. 75-76.) Barnes stated he works one day a week and has asked to be scheduled more, but is not because the bakery is not that busy. (Tr. 76.) In contrast, Barnes' employer reported that Barnes cannot handle working any more than 10 hours per week because of his disability. (Tr. 546.)

In weighing the evidence, the ALJ explains that he considered the third party statements submitted, including the statement of Barnes' employer, but he correctly points out that there is no evidence that any of the witnesses are medical or vocational experts capable of determining whether claimant is disabled, and lay witness testimony is not controlling. (Tr. 61.) The ALJ gives "significant weight" to Dr. Markway's findings and states that the moderate limitations found by Dr. Spencer are consistent with the record. (Tr. 63.) However, the ALJ does not address that Barnes minimized his utilization of a job coach at the bakery, and that Barnes' minimization was relied upon by Dr. Markway and Dr. Spencer in their evaluations, which were given significant weight. Barnes' statements to Dr. Spencer were also inconsistent with his testimony regarding the role of his job coach.

An ALJ's decision is not subject to reversal even when there is significant evidence in the record to support a conclusion other than the one reached. *Holley v. Massanari,* 253 F.3d 1088, 1091 (8th Cir.2001) ("As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it either because substantial evidence exists in the record that would have supported a contrary outcome or because we would have decided the case differently.") At the same time, in the case at hand, the ALJ's analysis does not address the inconsistencies among Barnes' statements to the ALJ, his statements to Dr. Spencer during the consultative exam, and statements in his function report and third party reports. Instead, the ALJ simply includes that the records indicate Barnes works part-time and is able to follow a "to-do" list. The ALJ does not reference the fact that the part-time work at the bakery is through the Center for Head Injury, or account for Barnes' utilization of a job coach in his RFC evaluation or questions to the vocational expert. Notably, the vocational expert testified that if an individual shows up to work every day and remains at his work station, but needs to be redirected every hour or so to remain on task in excess of 90% of the time or to be 90% as productive as equivalent workers, that type of productivity deficit would be prohibitive of competitive employment. (Tr. 86-87.) The ALJ may well have had proper reasons for reaching the conclusions he did as to Barnes' ability to concentrate, persist and maintain pace; however, because he did not cite to evidence in the record to support his conclusions and did not address why he failed to account for the substantial evidence in the record contradicting the conclusions, it is difficult for the Court to find the ALJ provided the necessary findings.

Additionally, while this Court may not resolve conflicts in evidence or decide questions of credibility, it is appropriate for the Court to look to portions of the record the ALJ did not discuss or cite when assessing whether a decision is supported by substantial evidence. *See Lewis v.*

11

*Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003) ("The review we undertake is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from the decision."). Given the volume of evidence in the record which appears to contradict the findings made by the ALJ, upon remand, Defendant will have an opportunity to consider the conflicting evidence.

## IV.  Conclusion

The Court finds that the Commissioner's decision as it presently stands was affected by the ALJ's improper consideration of evidence not of record. Upon reconsideration of appropriate evidence, the ALJ may well determine that Barnes is not disabled. The Court is aware that upon remand, the ALJ's decision as to non-disability may not change after addressing the deficiencies noted herein, but the determination is one the Commissioner must make in the first instance. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (when a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings); *Leeper v. Colvin*, No. 4:13-CV-367 ACL, 2014 WL 4713280 at *11 (E.D. Mo. Sept. 22, 2014) (ALJ duty to make disability determination).

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **GRANTED in part and DENIED in part**. (Docs. 1, 13.)

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **REVERSED and REMANDED** for further proceedings.

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will be filed contemporaneously with this Memorandum and Order remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of December, 2021.